UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------------ x
JERRELL COOK,                                          :
                                                       :
                          Plaintiff,                   :
                                                       :        **INITIAL REVIEW**
          -against-                                    :            **ORDER**
                                                       :
STATE OF CONNECTICUT, *et al.*,                        :        3:24-cv-01914 (VDO)
                          Defendants.                  :
------------------------------------------------------------------ x

**VERNON D. OLIVER**, United States District Judge:

Plaintiff Jerrell Cook is a pre-trial detainee in the custody of the Connecticut Department of Correction, housed at New Haven Correctional Center.[1] He filed a *pro se* complaint under 42 U.S.C. § 1983 for violation of his federally protected rights, alleging prison correctional officers failed to protect him from being attacked by another inmate. (Compl., ECF No. 1 at 4–5.)

**I.    FACTUAL BACKGROUND**

Though the Court does not set forth all facts alleged in Plaintiff's complaint, it summarizes his basic factual allegations here to give context to its rulings below.

While housed at Bridgeport Correctional Center, correctional staff placed Plaintiff into a cell with a known sex offender. (ECF No. 1 at 4.) Anticipating this would "cause problems"

---

[1] The Department of Correction website lists Plaintiff as an unsentenced inmate currently housed at New Haven Correctional Center. Connecticut State Department of Correction, *CT Inmate Info*, http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=286320 (last visited February 25, 2025). The Court may take judicial notice of this website. *See*, *e.g.*, *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *United States v. Rivera*, 466 F. Supp. 3d 310, 313 (D. Conn. 2020) (taking judicial notice of BOP inmate locator information); *Ligon v. Doherty*, 208 F. Supp. 2d 384, 386 (E.D.N.Y. 2002) (taking judicial notice of state prison website inmate locator information).

for him, Plaintiff asked prison administrators to move from his cell before other inmates became "hostile" towards him. (*Id.*) Correctional staff told Plaintiff to "deal with [his] living circumstances" or refuse housing, be sanctioned, and go to segregation. (*Id.* at 5.) Plaintiff chose to accept his living arrangement.

On the evening of March 10, 2023, Correctional Officer Izzo left Plaintiff's cell door open "for an extended period of time," was not "control[ing] the opening and closing of cells correctly," and was not monitoring the safety and security of inmates in Plaintiff's cell block. (*Id.* at 4.) As a result, another inmate entered Plaintiff's cell directly in front of Officer Izzo. (*Id.*) That inmate threw bodily fluids on Plaintiff and attacked Plaintiff with a sack of batteries. (*Id.* at 5.) According to an incident report attached to Plaintiff's complaint, correctional officers transported Plaintiff to the Restrictive Housing Unit ("RHU") after the alleged assault. (*Id.* at 24.) While Plaintiff was led to the RHU in handcuffs, the inmate who assaulted Plaintiff threw a pitcher of hot water on Plaintiff in view of Officers Izzo, Graham, Hathaway, Cretella, and Lieutenant Wiggins. (*Id.* at 5.) The incident report indicates that the hot water "caus[ed] minor injuries to [Plaintiff's] face, neck[,] and shoulders." (*Id.* at 24.) Plaintiff maintains that his arm is now permanently scarred. (*Id.* at 5.)

## II.    LEGAL STANDARDS

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Upon review, the Court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

The Court has thoroughly reviewed all factual allegations in the complaint and conducted an initial review of the allegations therein under 28 U.S.C. § 1915A.

## III. DISCUSSION

Plaintiff seeks monetary damages from the State of Connecticut, the Connecticut Department of Correction, and six correctional officers. *See* (*id.* at 1, 3–5.) The Court construes Plaintiff's complaint as raising a failure to protect claim under the Fourteenth Amendment.

"Prison officials are constitutionally required to 'take reasonable measures to guarantee the safety of the inmates,' in particular, 'to protect prisoners from violence at the hands of other prisoners.'" *Rembert v. Cheverko*, No. 12-CV-9196, 2014 WL 3384629, at *5 (S.D.N.Y. July 10, 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994)). "Because Plaintiff was a pretrial detainee and not a convicted prisoner at time of the alleged assault, his failure to protect claim is asserted pursuant to the Due Process Clause of the Fourteenth Amendment rather than the Cruel and Unusual Punishments Clause of the Eighth Amendment." *Delaney v. Westchester Cnty. Dep't of Corr.*, No. 19-CV-03524, 2021 WL 243066, at *2 (S.D.N.Y. Jan. 25, 2021) (citing *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017)).

A prison official violates a pre-trial detainee's rights under the Fourteenth Amendment "when (a) the inmate is incarcerated under conditions that 'pose an unreasonable risk of serious damage to his health' and (b) the prison official 'acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the [official] knew, or should have known that the condition posed an excessive risk to health or safety.'" *Ramos v. Cheney*, No. 3:24-CV-00006 (MPS), 2024 WL 1836097, at *3 (D. Conn. Apr. 26, 2024) (quoting *Darnell,* 849 F.3d at 30, 35 (noting that objective standard applies to deliberate indifference claims under Fourteenth

3

Amendment)). "A plaintiff must show 'something more than mere negligence' to establish deliberate indifference in the Fourteenth Amendment context." *Charles v. Orange Cnty.*, 925 F.3d 73, 87 (2d Cir. 2019). *See also Darnell*, 849 F.3d at 36 (stating that the second prong of the deliberate indifference standard under the Fourteenth Amendment standard applicable to claims of pretrial detainees "requires proof . . . that an official acted intentionally or recklessly, and not merely negligently").

Plaintiff alleges another inmate attacked Plaintiff twice—once with a sack of batteries in Plaintiff's cell, (ECF No. 1 at 5), and once with hot water as correctional officers led Plaintiff to the RHU after he was attacked in his cell. (*Id.*) Plaintiff attributes this first attack to Officer Izzo's "negligent" acts of leaving Plaintiff's cell door open "for an extended period of time," failing to "control the opening and closing of cells correctly," and failing to "pay attention to the safety and security of inmates." (*Id.* at 4.) "In situations where corrections officers have deliberately left cell doors open in order to leave a prisoner vulnerable to vicious attack, the courts rightly have expressed outrage." *Graham v. Coughlin*, No. 86-CV-163, 2000 WL 1473723, at *5 (S.D.N.Y. Sept. 29, 2000) (citing *Fischl v. Armitage*, 128 F.3d 50 (2d Cir. 1997) (vacating dismissal of Eighth Amendment claim where the record supported the inference that corrections officers opened cell doors for the purpose of allowing other inmates to attack the plaintiff)). But Plaintiff does not allege that Officer Izzo deliberately left Plaintiff's cell door open. Rather, Plaintiff claims Officer Izzo did so "negligent[ly]." (ECF No. 1 at 4.)

Officer Izzo's negligent act of leaving the cell door open and failing to pay attention to the safety of inmates cannot form the basis for a failure to protect claim under the Fourteenth Amendment. *See Ross v. Correction Officers John & Jane Does 1–5*, 610 Fed.Appx. 75, 78

4

(2d Cir. 2015) ("While [the defendant] may have exercised poor judgment in temporarily leaving his post, 'deliberate indifference describes a state of mind more blameworthy than negligence.'" (quoting *Farmer*, 511 U.S. at 835)); *Flores v. Lantz*, No. 05-CV-1288 (RNC), 2008 WL 4453421, at *6 (D. Conn. Sept. 30, 2008) (concluding that while "Officer Harris erred in opening the cell door for Bohannon, plaintiff has failed to show that this error amounted to deliberate indifference, as opposed to mere negligence."); *Palacios v. Corr. Officer Doe*, No. 95-CV-6855, 1997 WL 458816, at *2 (S.D.N.Y. Aug. 12, 1997) (dismissing claim that "defendants were negligent in failing to close the holding cell door, and that as a result of that negligence, a fight ensued" because "[d]eliberate indifference . . . requires more than a showing of mere negligence.").

"An inmate's claim based on negligence, however, 'is quite different from one involving injuries caused . . . by another prisoner where officials simply stood by and permitted the attack to proceed. . . .'" *Morales v. New York State Dep't of Corr.*, 842 F.2d 27, 30 (2d Cir. 1988) (cleaned up). Plaintiff alleges that another inmate who had attacked him with a sack of batteries subsequently threw hot water on Plaintiff in front of Officers Izzo, Graham, Hathaway, Cretella, and Lieutenant Wiggins. (ECF No. 1 at 5.) Plaintiff, who was especially vulnerable as correctional officers led him away from his cell in handcuffs, was in view of the officers while they stood by as Plaintiff was doused by another inmate with hot water. *See* (*id.*) As such, Plaintiff's allegations related to the second attack are sufficient to state a failure to protect claim under the Fourteenth Amendment. *See*, *e.g.*, *Ramos*, 2024 WL 1836097, at *3 (permitting Fourteenth Amendment failure to protect claim to proceed where officers allegedly permitted another inmate to attack hand-cuffed plaintiff); *Simms v. Durant*, No. 20-CV-1719 (KAD), 2021 WL 293567, at *2 (D. Conn. Jan. 27, 2021) (permitting Fourteenth Amendment

5

failure to protect claim to proceed where hand-cuffed plaintiff was attacked by another inmate who officer had let out of bullpen).

Plaintiff's Fourteenth Amendment claim may not proceed against all defendants. The State of Connecticut and its Department of Correction are immune from suit under § 1983. *Hubert v. Dep't of Corr.*, No. 21-CV-94 (VAB), 2023 WL 2072500, at *5 (D. Conn. Feb. 17, 2023) (observing that State of Connecticut and its Department of Correction are protected from suit by sovereign immunity). Plaintiff cannot seek damages against the remaining defendants in their official capacities, because, as state employees, such claims are barred by the Eleventh Amendment. *See*, *e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Further, Plaintiff can only seek damages against the remaining defendants in their individual capacities if he shows their "personal involvement" in the constitutional violation. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."). Plaintiff has sufficiently alleged the personal involvement of Officers Izzo, Graham, Hathaway, Cretella, Callands, and Lieutenant Wiggins. *See* (ECF No. 1 at 5, 27); *Constant v. Prack*, No. 16-CV-3985, 2019 WL 3287818, at *11 (S.D.N.Y. July 19, 2019) (finding "allegations and Exhibits make the requisite showing of personal involvement needed for Plaintiff's claims" in Rule 12(b)(6) context). Thus, Plaintiff may seek damages from these correctional officers in their individual capacities for violating his rights under the Fourteenth Amendment.

**IV.   ORDERS**

For the reasons set forth above, the Court enters the following orders:

(1) Plaintiff may proceed on his Fourteenth Amendment failure to protect claim for damages against Officers Izzo, Graham, Hathaway, Cretella, Callands, and Lieutenant Wiggins in their individual capacities.

(2) All other claims are DISMISSED, and all other defendants are terminated.

(3) **The Clerk shall** verify the current work address for Defendants Izzo, Graham, Hathaway, Cretella, Callands, and Wiggins with the DOC Office of Legal Affairs, mail to them at their confirmed address a waiver of service of process request packet containing the complaint (ECF No. 1) and this order on or before **March 18, 2025**, and also shall report on the status of the waiver request on the **thirty-fifth (35th) day** after mailing. If Defendants fail to return the waiver request, the Clerk's Office shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on any such defendant, and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(4) **The Clerk shall** send a courtesy copy of the complaint and this order to the DOC Office of Legal Affairs and the Office of the Attorney General.

(5) **The Clerk shall** send Plaintiff a copy of this Order.

(6) Defendants shall file their response to the complaint, either an answer or motion to dismiss, **on or before May 19, 2025**. If they chose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They also may include all additional defenses permitted by the Federal Rules.

(7) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed on or before **September 23, 2025**. Discovery requests need not be filed with the court.

(8) All motions for summary judgment shall be filed on or before **October 23, 2025**.

(9) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(10) If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(d)(1) provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write **PLEASE NOTE MY NEW ADDRESS** on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address. Plaintiff should also notify Defendants or the attorney for Defendants of his new address.

(11) Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. Plaintiff is advised that the Program may be used only to file documents with the court. As local court rules provide that discovery requests are not filed with the court, discovery requests must be served on Defendants' counsel by regular mail.

                                                                  **SO ORDERED.**

Hartford, Connecticut
February 25, 2025

                                                    /s/Vernon D. Oliver
                                                    VERNON D. OLIVER
                                                    United States District Judge